DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT MARCH TERM, 1872.

---

ANN MARIA BRAY, PLAINTIFF IN ERROR, v. WILLIAM S. TAYLOR, DEFENDANT IN ERROR.

> The rule of the common law that inheritances shall not lineally ascend, although modified so as to let in the father, and to some extent the mother, has not been abolished in this state, and therefore a grand mother is not entitled, by virtue of the sixth section of the statute of descents, to inherit lands of which the grandchild died seized.

On writ of error to Monmouth Circuit.

Declaration in covenant on deed from Ann Maria Bray, the defendant below, to William S. Taylor, the plaintiff, dated March 1st, 1855, which, among other things, contained a covenant that she was seized in her own right of an absolute and indefeasible estate of inheritance, in fee simple of the premises described in said deed, and had good right, full power and authority in the law to convey the same—Breach, that she had not such estate, &c., and had not authority to convey, &c.

Plea negatives the breach stated in the declaration, and alleges that Bray had such estate, &c., and had authority to convey, &c.

The premises described in said deed were part of the real estate of which Daniel Bray died seized, being part of his farm on which he lived.

Daniel Bray executed his last will and testament in due form of law, dated January 11th, 1841, and died in July, 1841, without having revoked said will.

Among other devises was the following, viz.: " I give and bequeath to my wife, Ann Maria Bray, the use and occupation of one-half of the farm on which I now live, and of my wood lot near Old Woman's Hill, during her widowhood, jointly with my daughter Ann Rebecca, to whom I bequeath the use and occupation of the other half of the said farm and wood lot, during her natural life, jointly with her mother during her widowhood ; and from and after the decease or second marriage of my said wife, I give and bequeath the said farm and wood lot, with their appurtenances, to my said daughter Ann Rebecca, her heirs and assigns forever, subject, however, to the right of dower of my said wife therein."

Ann Maria Bray, since the death of her husband, Daniel Bray, the testator, has remained unmarried.

Ann Rebecca survived her father, Daniel Bray, the testator, and married Derrick C. Campbell.

Ann Rebecca died before 1855, leaving her surviving, a son, Joseph Campbell, born during coverture.

Joseph Campbell, son of Ann Rebecca, died after his mother, and previous to 1855.

Derrick C. Campbell, the father of Joseph, and husband of Ann Rebecca, is still living. The premises having come to Joseph by descent from his mother, the father was not entitled to succeed to them, but they descended as if Joseph had survived his father. *Nix. Dig.* 236, § 3.

Joseph Campbell, son of Ann Rebecca and Derrick C. Campbell, had no brothers or sisters of the whole or half blood.

Ann Rebecca had no brothers or sisters of the whole blood, but left her surviving one brother of the half blood, and children of brothers and sisters of the half blood.

Derrick C. Campbell, previous to 1855, released to Ann Maria his life estate in the premises, described in the deed given by defendant to plaintiff.

It was agreed by counsel, that the Circuit Court should certify the case to the Supreme Court for its advisory opinion, and if, upon the foregoing statement, the court should be of opinion that Ann Maria Bray, the defendant, was, at the date of said deed, seized in fee of the premises described in the deed, the Circuit Court should be advised to give judgment for the defendant; but if the court should be of opinion that the said Ann Maria Bray, at the date of said deed, was not seized of said premises, then the Circuit Court should be advised to proceed to ascertain the plaintiff's damages, for which judgment should be given.

After argument in the Supreme Court, a certificate was made that Mrs. Bray was not, at the date of the said deed, seized in fee of the premises described, whereupon, in accordance with the stipulation of counsel, judgment was entered for the plaintiff below, on which judgment error was brought.

The opinion of the Supreme Court will be found in 3 *Vroom* 182.

For the plaintiff in error, *J. F. Randolph.*

For the defendant, *M. B. Taylor.*

The opinion of the court was delivered by

DEPUE, J. Joseph Campbell died seized of the premises in question, which descended to him from his mother, Ann Rebecca Campbell, who acquired title under the will of her father. The deceased died intestate, without issue, and without leaving a brother or sister of the whole or half blood, or any issue of such brother or sister, and without leaving any father or mother capable of inheriting said lands. He left surviving him an uncle of the half blood, and the children of deceased uncles of the half blood, and also the defendant, Ann Maria Bray, who was his grandmother.

Bray v. Taylor.

The uncle and cousins of the half blood, by the established rule of the common law, were excluded from the inheritance; neither are they admitted to the succession by the fifth section of the statute of descents, which extends only to brothers and sisters of the half blood, and their issue, and does not embrace collaterals of a more remote degree. *Den* v. *Stretch,* 1 *South.* 182.

The plaintiff in error, as the grandmother of the deceased, was in the next degree of consanguinity, whether the computation of the degrees is made by the method of the civil law, or of the canon law. By force of the sixth section of the statute, she is entitled to succeed to the inheritance, unless excluded from the line of inheritance by the first canon in the common law system of descent, which prohibited the lineal ascent of lands, and escheated the lands to the lord, rather than permit those who were the lineal ancestors of the person last seized, to inherit. 2 *Bl. Com.* 208.

The sole question upon which this case hinges, is whether that canon is in force in this state.

Anterior to the Revolution, the entire system of the common law, with respect to the descent of lands, was adopted in this colony as part of the common law which the colonists brought with them from the mother country. As such, it was retained by that section of the constitution, which declared that the common law of England, as well as so much of the statute law as had theretofore been practiced in the colony, should remain in force until altered by future legislation. The canon now in question, as part of the common law so adopted, is still the law in this state, unless it has been abrogated by act of the legislature, either in express words, or by necessary implication.

Until 1780, the descent of lands in this state continued to be regulated by the rules of the common law, without any change or abatement of their rigor. The act of May 24th, 1780, (*Pat.* 43,) was the earliest legislation on this subject. By this act, primogeniture among sons and brothers was abolished, and the inheritance descended to the sons or

brothers in equal shares as tenants in common, where by the common law, the eldest son or eldest brother alone would have inherited. Daughters were admitted to share the estate with the sons and sisters with the brothers, in the proportion of one share to a female, and two shares to a male, and the issue of any child, or brother or sister dying in the lifetime of the person last seized, represented his or her ancestor, and was entitled to the share the parent would have taken, if living at the death of the person so seized. The same inequality of division among such issue, as between males and females, being observed, and in certain cases in default of issue, and of brothers and sisters of the whole blood, and their issue, brothers and sisters of the half blood were allowed to inherit; the brother of the half blood being also entitled to two shares, and the sister to one share.

By the act of January 24th, 1799, (*Pat.* 339,) posthumous children of a father dying testate or intestate, were made capable of inheriting, the same as if born in the lifetime of the father, unless expressly excluded by the will of the deceased.

In 1816, by two acts passed respectively on the 5th and 15th of February, the inequality of the shares of males and females, where they were entitled to inherit, was removed, and females, in such cases, were admitted to an equal share with the males. *Acts*, 1816, *pp.* 7, 26.

The acts of May 24th, 1780, and of February 5th and 15th, 1816, were repealed by the act of January 29th, 1817, but the provisions of the repealed acts were in substance re-enacted by the new act. *R. L.* 608.

It is manifest that the legislation that preceded the act of 1817 did not supersede the entire system of the common law, whereby the succession to lands on the death of the owner was determined, and that its operation was only to modify the rules of the common law in some particulars, by providing for succession in certain cases. No provision was made for descent in the collateral line beyond brothers and sisters of the whole blood and their issue, and brothers and sisters of the half blood. Of necessity, descent beyond the

enumerated classes continued to be regulated by the canons of the common law, which had not been altered or modified by act of legislature.  In none of this legislation is there the faintest indication of a legislative intent to change or abrogate the canon in question.  The subject of the ascent of lands lineally, is not in the slightest degree touched upon in any of these enactments.  No expression used therein, or principle adopted thereby, can, by construction pursued in the most aggressive spirit, be made to reach the subject of the exclusion of relations in the direct ascending line.

The act of 1817 contained the earliest provision in favor of succession by ancestors in the direct line.  It admitted the father to inherit next after the children of the deceased and their issue, and brothers and sisters of the whole blood and their issue, unless the inheritance came to the person so seized from the part of his or her mother by descent, devise, or gift. Except as to such inheritances, the father was preferred to brothers and sisters of the half blood.  By this act the child or children of any deceased brother or sister of the half blood, dying in the lifetime of the person seized, were admitted to succeed to the share the parent would have been entitled to, if he or she had survived.  Then followed the act of 1838 by which the mother of any person dying seized without leaving lawful issue, and without leaving a brother or sister of the whole blood, or any lawful issue of any such brother or sister, and without leaving a father, became entitled to inherit for life, without any qualification as to the source from which the inheritance came to the deceased.  *Acts*, 1838, *p.* 85.

By the fifth section of the act of 1817, in default of the enumerated heirs on the death of the person seized, leaving several persons, all of equal degree of consanguinity to the person so seized, it was provided that the lands should descend and go to the said several persons of equal degree of consanguinity, as tenants in common, in equal parts, however remote from the person so seized the common degree of consanguinity might be, excluding, however, in case the inheritance came to the person so seized by descent, devise, or gift

from some one of his or her ancestors, all those who are not of the blood of such ancestor, if there be any person or persons in being, of the blood of such ancestor, capable of inheriting. This section, as modified by the act of 1838, with respect to the life estate of the mother, still remains in force, and is the sixth section of the present act. *Nix. Dig.* 236.\*

The provisions, with respect to the father and mother above mentioned, comprise all the legislation there is in relation to the inheriting of lands by those in the ascending line. It was not insisted on the argument, nor can it be asserted with any reason, that an implication arises from these special provisions of the entire abrogation of the common law canon, which, under all circumstances, excluded those who were in the direct ascending line. Nor can such a result be deduced upon any principle of legal construction from the language of the section which regulates descent in default of the enumerated heirs.

The canon in question occupied a conspicuous place in the English law of descents. Indeed, it may be said to have been one of the chief foundation stones in the structure of feudal tenures. It was incontestably part of the common law at the separation of the colonies from the mother country. As such, it was adopted as the law of this state by the first constitution. If it has since been abrogated, the evidence of repeal must be obtained from some expression of the legislative will, ascertained upon the principles of construction, which govern the court in determining when a prior law has been superseded or altered by statute. No evidence of such change is furnished, either expressly or by implication, in the several statutes which have been passed for the purpose of regulating the descent of lands in this state.

It is not intended to express or intimate any opinion as to the method of computing the degrees of consanguinity under the section under consideration; nor upon the question whether the children of any deceased person, who, if living at the death of the person seized, would have been within the

---

\* *Rev.*, p. 298.

class of those of equal degree of consanguinity, are entitled to represent their deceased parent. These important questions are not involved in the decision of this ease, and it is not necessary to express any opinion on those subjects.

The judgment of the Circuit Court is affirmed, on the ground that the rule of the common law that inheritances shall not lineally ascend, although modified so as to let in the father, and to some extent the mother, has not been abolished ; and that therefore the plaintiff in error did not acquire, by descent, on the death of her grandson, title to the premises in dispute.

*For affirmance*—THE CHANCELLOR, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, LATHROP, OGDEN, OLDEN, WALES.    10.

*For reversal*—None.

CITED in *Smith* v. *Gaines*, 8 *Stew. Eq.* 65.